22 N.J. Super. 1 (1952)
91 A.2d 508
ROBERT E. BOYD, PLAINTIFF-RESPONDENT.
v.
INTERNATIONAL SMELTING & REFINING COMPANY, A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1952.
Decided October 9, 1952.
*2 Before Judges FREUND, STANTON and CONLON.
Mr. Baruch S. Seidman argued the cause for the appellant (Messrs. Burton & Seidman, attorneys).
Mr. Edward A. Levy argued the cause for the respondent (Messrs. Levy & Levy, attorneys).
The opinion of the court was delivered by CONLON, J.C.C. (temporarily assigned).
Judgment was entered in the Middlesex County Court on the verdict of a jury in favor of the plaintiff for $2,000. The defendant appeals on the sole ground that the trial court erred in not granting its motion for a judgment of dismissal at the close of the defendant's case.
On the motion to dismiss, the trial court was confronted with the following facts:
On October 4, 1949 the plaintiff, a tugboat captain, was employed by O'Brien Brothers Towing Company, which in turn had been engaged by Anaconda Copper Mining Company, to dredge the waters adjacent to defendant's dock at *3 Perth Amboy, New Jersey. The plaintiff had brought his tugboat to the defendant's dock about a week before the alleged accident and during the ensuing week was engaged in taking care of the dredge, running out anchors, shifting barges and similar duties in connection with the dredging operations. During the performance of his services plaintiff was required to remain on his boat continuously, excepting that it was necessary for him to use the telephone several times a day. After completing his first day's work plaintiff proceeded to leave defendant's premises through the main gate, but was stopped until he had identified himself and was thereupon issued a security pass. He learned that there was a telephone near the dock area and was permitted to use it, transmitting his calls through the private switchboard of the defendant several times a day. On the day of the accident he went out to use the telephone as was his custom, but was unable to follow his usual route because a derrick was in operation blocking his way. Upon leaving the boat, therefore, he walked along the dock and passed a structure known as Derrick House No. 2. A cable from Derrick House No. 2 ran through a stanchion imbedded on the dock. On the stanchion was the inscription "keep clear  watch cable," and a sign on the derrick house read "Danger  watch cable keep clear." He stepped over the cable and proceeded to the telephone; after completing his call he retraced his steps and again came to the cable. As he was stepping over it, the cable snapped taut, struck his legs, and he was thrown to the ground sustaining the injuries of which he complains. The cable in question was put in operation by the defendant's employee, John M. Kislan, who was in charge of Derrick House No. 2. He was located in the derrick house surrounded by windows from which he could observe the whole area of the derrick's operation including the part of the dock where plaintiff was crossing the cable at the time he was injured.
With this posture of the proof the trial court, over the objection of the plaintiff, ruled that the status of the plaintiff *4 was that of a licensee, and over the objection of the defendant submitted to the jury the question as to whether the defendant had violated the duty which it owed to the plaintiff as a licensee. It is the latter ruling that forms the basis of this appeal. The appellant contends that there was no proof of "willful injury" committed by its agent, and that therefore there was no evidence of its having violated the duty owed to the plaintiff.
The duty owed by the owner of land to a licensee is too well settled to require exposition. It has recently been reiterated in King v. Patrylow, 15 N.J. Super. 429 (App. Div. 1951). In that case, speaking for the court and quoting Staub v. Public Service Ry. Co., 97 N.J.L. 297 (E. & A. 1922), Judge Brennan said:
"The emphasis is upon the reckless indifference to consequences of the deliberate act or omission in the face of known circumstances and the high degree of probability of producing the harm. `To establish a willful or wanton injury it is necessary to show that one with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result.'"
In declining to take the case from the jury the court had before it evidence and reasonable inferences to warrant the following conclusions in favor of the plaintiff: that he was on defendant's premises and proceeding to and from the telephone with defendant's permission; that the cable over which he had to walk was under the control of the operator of Derrick House No. 2 to which the cable was attached; that the operator was in a position to see the plaintiff crossing the cable; that the operator either saw the plaintiff and gave no warning, or that he did not look to see what effect the tightening of the cable would have. Hence there was evidence to the effect that he was guilty of the performance of a positive act, i.e., the tightening of the cable, under such circumstances as to warrant the jury *5 in finding that he acted with reckless indifference to the consequences. The court, in denying the motion for judgment of dismissal, did not, of course, determine that defendant's agent was guilty of a violation of the duty owed the plaintiff. It properly determined that a jury question was presented.
The judgment below is affirmed.